**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

RICHARD D. KING, JR.,

    Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

    Defendant.

Civil Action No. 2:16-cv-2916 (JLL)

OPINION

**LINARES**, Chief Judge.

This matter comes before the Court by way of Plaintiff Richard D. King, Jr. (hereinafter "Plaintiff")'s motion to alter or amend the Court's previous judgment affirming Administrative Law Judge ("ALJ") Leonard Olarsch's denial of Plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act") pursuant to Federal Rule of Civil Procedure 59(e). The Court's jurisdiction to review Plaintiff's motion falls under 42 U.S.C. § 405(g). In accordance with Federal Rule of Civil Procedure 78, the Court decides this matter without oral argument. After careful consideration of the entire record, the Court denies Plaintiff's motion for the reasons discussed below.

### I.  BACKGROUND[1]

#### A. Procedural History

On May 3, 2012, Plaintiff filed applications for DIB and SSI alleging an onset date of

---

[1] "R." refers to the Administrative Record, which uses continuous pagination and can be found at ECF No. 5.

September 27, 2010. (R. at 102; Compl. ¶ 6). These claims were denied initially on September 11, 2012. (R. at 114). Upon reconsideration, Plaintiff was found to be disabled with an onset date of January 21, 2013. (Id. at 134-48, 169-75). On May 10, 2013, Plaintiff requested an administrative hearing asserting that he has been disabled since September 27, 2010 rather than January 21, 2013. (Id. at 185). An administrative hearing was held on May 28, 2014 before ALJ Olarsch during which Plaintiff and vocational expert ("VE") Ms. Tanya Edghill both provided testimony. (Id. at 40). Thereafter, ALJ Olarsch issued a decision finding Plaintiff not disabled from the alleged onset date, September 27, 2010, through the date of the administrative decision on September 30, 2014. (Id. at 34). The Appeals Council affirmed ALJ Olarsch's decision on March 22, 2016. (Id. at 1-6). Plaintiff filed an appeal with this Court on May 23, 2016 contesting the denial of SSI and DIB. After the motion was fully briefed, the Court issued an Opinion affirming the final decision of the Commissioner on May 1, 2017. (ECF No. 11, 12). Thereafter, on May 24, 2017, Plaintiff filed a motion to alter or amend the Court's previous judgment. (ECF No. 13, "Pl.'s Br."). On June 5, 2017, Defendant filed an opposition. (ECF No. 14, "Def.'s Opp'n"). Plaintiff then replied to Defendant's opposition on June 6, 2017. (ECF No. 15, "Pl.'s Reply").

### B. Medical Evidence

On May 3, 2012, Plaintiff filed his initial claim for disability which alleged Plaintiff suffered from the following illnesses, injuries or conditions: increased severe chronic pain, depression, severe stress, lumbar and cervical limited mobility, uncontrollable high blood pressure, and a heart condition. (R. at 102).

A progress note from Dr. Somaya Abboud, M.D. ("Dr. Abboud") on August 24, 2010 indicates that Plaintiff was diagnosed with anxiety and uncontrolled hypertension and Dr.

Abboud prescribed Plaintiff Benazepril and Alprazolam and increased his dosage of Norvasc. (R. at 678). On August 25, 2010, Plaintiff visited the emergency room due to a head injury and left shoulder pain after he fell while walking his dog the night prior. (R. at 545). The examination performed at the emergency room indicated an abrasion to the right forehead and tenderness in the left shoulder with pain on range of motion. (Id.). Plaintiff was diagnosed with an abrasion, closed head injury and a shoulder sprain. (Id.). Plaintiff was prescribed an arm sling and given Percocet. (Id.).

On September 27, 2010, Plaintiff was admitted to the hospital for evaluation and treatment of subdural hematoma and subarachnoid hematoma/trauma following the abovementioned fall. (Id. at 465). Plaintiff was discharged two days later. (Id.). On October, 5, 2010, Plaintiff again visited the emergency room for headache and vision change, and the final diagnosis indicated post-concussive syndrome and subdural hematoma. (Id. at 527).

On October 13, 2010, Plaintiff visited the Hunterdon Orthopedic Institute during which Plaintiff complained of headaches and subdural hematoma. (Id. at 521). The record also indicates Plaintiff's medications as Amlodipine Besylate, Atenolol, Benzapril, Keppra XR, Tylenol, Vicodin, and Aleve. (Id. at 521-22). In said report, it is indicated that Plaintiff asserted that he had fallen down stone steps on September 26, 2010 after consuming alcohol and that he continues to have daily headaches and occasional visual disturbance with loss of depth perception and peripheral vision. (Id.). The report further indicated Plaintiff as complaining of worsening anxiety and depression, and attending a day program for behavior problems at Hunterdon Medical Center. (Id.). Also, it was reported that Plaintiff asserted that he had stopped drinking and admitted to having a dependence on alcohol. (Id.).

On November 4, 2010, Plaintiff was evaluated in the emergency room for altered mental

status as a result of a benzodiazepine overdose. (Id. at 513). He had a history of a recent brain injury with seizures and had been sober from alcohol for 40 days. (Id. at 515).

On April 8, 2011, Dr. Abboud diagnosed Plaintiff with high cholesterol, shoulder tenderness, anxiety and hypertension. (Id. at 680). The record from April 8, 2011 demonstrates that Dr. Abboud ordered x-rays. (Id. at 682). Said x-rays of Plaintiff's left shoulder revealed that Plaintiff's shoulder was not fractured nor dislocated and that there were some degenerative changes of the glenohumeral joint space and sclerotic density in the proximal left humeral diaphysis, which may have represented a bone fracture; the soft tissues were normal. (Id. at 703).

On April 29, 2011, during a follow-up visit Plaintiff complained of pain in the left shoulder when exercising and reported that he visited Robert Wood Johnson for an accident he suffered from in September 2010. (Id. at 683). Pertaining to Plaintiff's April 29, 2011 follow-up visit, the record indicates Plaintiff was to have an x-ray of the left shoulder and that his treatment plan further included diet and exercise, fish oil for three months, Vitamin D and Alprazolam. (Id.). Thereafter on May 15, 2011, Plaintiff visited Advanced Medicine of West Essex and complained that he was depressed and had shoulder pain and trouble sleeping. (Id. at 685). On June 20, 2011, Plaintiff had a follow-up visit at Advanced Medicine of West Essex; during said visit, Dr. Abboud diagnosed Plaintiff with left shoulder pain, elevated cholesterol, anxiety and hypertension. (Id. at 680-81). Dr. Abboud prescribed Plaintiff Lipitor and Valium. (Id.).

On April 27, 2012, in a record from Advanced Medicine of West Essex, Plaintiff stated that he suffered from stress, anxiety, worsening shoulder pain and insomnia. (Id. at 684). Dr. Abboud prescribed Plaintiff with Amlodipine, Benazepril, Atenolol, and Valium. (Id.). On June 11, 2012, Dr. Abboud diagnosed Plaintiff with controlled hypertension and high cholesterol and indicated that Plaintiff's impairments include onset symptoms of depression and left shoulder

and lower back pain. (Id. at 670). The record also indicates that Plaintiff was prescribed Amlodipine, Elavil, Benzapril, ASA and Cialis and that Plaintiff could lift and carry five pounds, stand and/or walk up to two hours per day and sit less than six hours per day. (Id. at 672). At the request of the Social Security Administration, Dr. Abboud completed an assessment of Plaintiff on July 17, 2012. The assessment reveals that Plaintiff was diagnosed with hypertension controlled, cholesterol, coronary artery disease, diabetes, osteoarthritis and anxiety. (Id. at 670-71). His symptoms included depression and pain to the left shoulder and lower back. (Id. at 673). Dr. Abboud opined that Plaintiff could lift/carry 5 pounds occasionally, stand and/or walk for up to 2 hours, and sit for less than 6 hours in a an 8 hour workday. (Id.).

An August 10, 2012 record from Dr. Abboud indicates Plaintiff experienced chest pain, depression, pain in the neck and shoulder region and minor headaches and further that Dr. Abboud diagnosed Plaintiff with insomnia, chest pain, anxiety and hypertension. (Id. at 722). Further during said visit, Plaintiff was prescribed Paxil and Elavil. (Id.).

At the request of the Social Security Administration, Dr. Ronald G. Silikovitz, Ph.D. evaluated Plaintiff on August 27, 2012. (Id. at 706-10). Dr. Silikovitz opined that Plaintiff was unable to work because of chronic pain, depression, stress and limited range of motion in lumbar and cervical spine. (Id. at 706). Dr. Silikovitz diagnosed Plaintiff with major depression, recurrent, moderate generalized anxiety disorder, cocaine abuse and alcohol abuse in remission. (Id. at 710).

October 5, 2012, Plaintiff revealed that he had feelings of depression and left shoulder pain, and further indicated that he was experiencing insomnia. (Id. at 720). Plaintiff asserted that the Elavil was not effective. (Id.). On November 20, 2012, Dr. Abboud examined Plaintiff during a follow-up visit for a head injury. (Id. at 720). Dr. Abboud diagnosed Plaintiff with a head

laceration, hypertension, facial laceration, pre-diabetes, and alcohol intoxication. (Id.). On November 29, 2012, Plaintiff asserted he experienced shoulder pain. (Id. at 718).

On May 9, 2013, Dr. Abboud's diagnosis revealed chronic shoulder and neck pain, post cervical fusion and lumbar fusion, history of multiple falls with subdural hematoma, CAD and 2 stents, major depression, dizziness and post cardiac catheterization on April 16, 2013. (Id. at 766).

After reviewing Plaintiff's file, Dr. Joseph Presto, M.D., a non-examining state agency medical consultant, provided an assessment on February 16, 2013 that indicated Plaintiff was able to stand or walk no more than four hours and sit about six hours in an eight hour workday. (Id. at 126). Dr. Presto's assessment further demonstrated that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently and that Plaintiff could not climb ladders, ropes or scaffolds and only occasionally stoop. (Id. at 127).

### C. Plaintiff's Testimony

During the administrative hearing, Plaintiff testified that he was 51-years-old, that he has a bachelors degree in English communications and a master's degree in management science. (Id. at 42-43). Also, at the time of the administrative hearing, Plaintiff testified to being divorced, to having three children and to living with his parents. (Id. at 59). Plaintiff set forth that he has his own area of the house that could qualify as a small apartment. (Id.).

Plaintiff asserted that due to a slip-and-fall accident while exiting a swimming pool, the onset date of his disability is September 27, 2010 as he suffered from a severe concussion and a subdural hematoma as a result of the accident. (Id. at 43). Plaintiff testified that due to the incident he was hospitalized for about a week and was forced to leave his job. (Id. at 44).

Plaintiff stated that between 2001 and 2005 he had four spinal fusions and suffered from a

heart attack and that due to the heart attack stents were inserted into him. (Id. at 45). Plaintiff further stated that he subsequently suffered from one or two more heart attacks and that his heart issues interfere with his daily functioning as he must take blood pressure medication, Amlodipine, BenezePro, and Metoprolol. (Id.).

Plaintiff also testified that he has frequent panic attacks and therefore must take Valium. (Id. at 46). As to the panic attacks, Plaintiff asserted that the attacks occur when he is driving or when he is laying in bed. (Id. at 47). Plaintiff testified that he began seeing a psychologist a few weeks prior to the administrative hearing in order to treat his panic attacks and that regarding any psychotropic medications, his primary care physician, Dr. Abboud prescribes him Valium for anxiety and Amitriptyline for depression. (Id. at 50).

Plaintiff's testimony further provided that he experiences issues driving a motor vehicle since his neck movement is limited because he is unable to move it from side-to-side. (Id. at 48). Plaintiff stated that he does not have special mirrors in his automobile to assist in his limitation. (Id.). Also regarding Plaintiff's driving abilities, he testified that chronic pain in his lower back, due to previous surgeries, hinders his ability to operate a motor vehicle because driving exacerbates the pain. (Id. at 48-49). In response to the ALJ's inquiry regarding stooping, Plaintiff set forth that he has issues bending at the waist but also affirmed that the range of motion in his back is "pretty good" depending on the activity. (Id. at 49).

Plaintiff testified that a year prior to the administrative hearing, he had visited the emergency room as a result of another slip-and-fall accident which occurred outside of his parent's house. (Id. at 54). Plaintiff testified that during said visit surgical staples were inserted into the back of his skull; however, Plaintiff indicated that he was unsure as to whether or not he had fractured his skull. (Id.).

Plaintiff asserted that, prior to his first or second surgeries, he had issues with substance abuse. (Id. at 54). Plaintiff testified that he was seeing pain management doctors that were prescribing him medications that were not alleviating his symptoms and that he therefore combined the medications with alcohol on a regular basis. (Id. at 54-55). Although Plaintiff asserted that he "[didn't] know if [he] would call it addiction", he stated that he was overmedicating himself. (Id. at 55). Plaintiff further testified that, after his second surgery and also recognizing the damage it was causing, Plaintiff stopped this habit in or around January 2002. (Id. at 55-56). Plaintiff asserted that his last relapse with alcohol occurred in 2002. (Id. at 58).

Plaintiff testified that a bad day with respect to his physical and mental conditions involve a panic attack during which he walks in circles in his room "wondering what [the] hell [he's] going to do." (Id. at 68). Plaintiff also testified that if he has to drive longer than fifteen or twenty minutes it affects him and that if he needs to exert himself physically, "that can also be a problem." (Id. at 69). Plaintiff stated that during a bad day, which occur a few times per week, he will try to get the "kinks out" by "stretching or lying on the floor to try and make [his] back relax." (Id. at 69-70). Plaintiff testified that he could stand for fifteen, twenty minutes and lift "maybe 15 pounds." (Id. at 72).

### D. ALJ Olarsch's Decision

Based upon the evidence, ALJ Olarsch issued a decision on September 30, 2014 that found Plaintiff not disabled within the meaning of the Act from the alleged onset date through the date of the administrative decision. (Id. at 28). At step one, ALJ Olarsch opined that Plaintiff had not engaged in substantial gainful activity since September 27, 2010, Plaintiff's alleged onset date. (Id.). At step two, ALJ Olarsch found that Plaintiff's severe impairments included spine disorders, affective disorders, anxiety disorders. (Id. at 28). At step three, the ALJ found that Plaintiff did not

have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (Id. at 28-29). Specifically, the ALJ opined that the medical evidence did not establish the requisite evidence of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis under listing 1.04.

Before proceeding to Step 4, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b) except can stand and walk four hours, perform frequent postural maneuvers, occasional bending, no climbing of ladders, ropes or scaffolds, frequent rotating of neck and raising right arm above shoulder, limited to simple routine, repetitive, tasks, off task 10 percent of the workday. (Id. at 30). Based on Plaintiff's RFC, the ALJ found that Plaintiff is unable to perform any past relevant work at step four. (Id. at 32). Lastly, at step five, ALJ Olarsch determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform which included telemarketer, labeler, office cashier, and ampoule filler. (Id. at 33). In conclusion, the ALJ determined that Plaintiff had not been disabled as defined by the Act from the alleged date of onset, September 27, 2010 through the date of the administrative decision.

## II. STANDARD OF REVIEW

### A. Standard for a Motion to Alter or Amend a Judgment

"A proper motion to alter or amend judgment must rely on one of three major grounds: (1) an intervening change in controlling law; (2) the availability of new evidence [not available previously]; or (3) the need to correct clear error [of law] or prevent manifest injustice." *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F. 3d 1194 (3d Cir. 1995)(internal citations and quotations omitted)). "Reconsideration motions, however, may not be used to relitigate older matters, nor to raise arguments or present evidence that could have been raised prior to the entry

of judgment." *P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*, 161 F. Supp. 2d 349, 352 (D.N.J. 2001).

### B. Substantial Evidence Standard

A District Court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and "[i]t is less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). The "substantial evidence standard is a deferential standard of review." *Id.* The ALJ is required to "set forth the reasons for his decision" and not merely make conclusory unexplained findings. *Burnett v. Comm'r of Soc. Sec,* 220 F.3d 112, 119 (3d Cir. 2000). But, if the ALJ's decision is adequately explained and supported, the Court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). It does not matter if this Court "acting *de novo* might have reached a different conclusion" than the Commissioner. *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986)). Finally, the Third Circuit has made clear that "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his [or her] analysis. Rather, the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505.

### III. DISCUSSION

Plaintiff seeks an amendment of the Court's judgment affirming ALJ Olarsch's determination that Plaintiff is not disabled within the meaning of the Act and alleges that the Court overlooked facts in the procedural history and medical evidence that led to a decision that

is clear error, manifestly unjust and that requires reversal or remand for reconsideration of Plaintiff's disability. (Pl.'s Br. 2). In opposition, Defendant contends that the ALJ acted entirely within his discretion in considering whether Plaintiff was disabled from, September 27, 2010, the date Plaintiff alleged as his onset date. (Def.'s Opp'n 1). The Court agrees with Defendant and for the reasons discussed below, the Court finds that Plaintiff fails to meet the standard for a Rule 59(e) motion to warrant an amendment of the Court's previous judgment. Plaintiff sets forth three arguments in support of his motion. The Court will address each argument in turn below.

First, Plaintiff argues that the Court overlooked that upon reconsideration Plaintiff was found to be disabled as of January 21, 2013. (Pl.'s Br. 1). Plaintiff contends that the ALJ erred in his determination since Plaintiff was only appealing the onset date of disability and requested a hearing to appeal the portion of the determination of which he was found not disabled between September 27, 2010 to January 20, 2013. (Id. 2). Challenging Plaintiff's argument, Defendant sets forth that ALJ Olarsch acted within his discretion in considering whether Plaintiff was disabled from his alleged onset of September 27, 2010 rather than as of a state agency partial disability allowance date. (Def.'s Opp'n 1).

Plaintiff's argument holds little weight and does not warrant an amendment to the Court's previous judgment. In Plaintiff's request for a hearing by an Administrative Law Judge, Plaintiff set forth that he "disagree[d] with the determination made on [his] claim for SSI Disability/Title II Benefits because [he did] not agree with the onset date of [January 2013]" and that "[he has] been disabled since September 2010." (R. at 185). In the May 21, 2013 Request for Hearing Acknowledgment Letter ("Hearing Acknowledgment Letter"), Plaintiff was notified that the ALJ may consider other issues that were decided in Plaintiff's favor in the event Plaintiff appealed. (Id. at 189-92). Plaintiff was further notified that "the ALJ will review those parts of the

11

decision which you believe are wrong. The ALJ will look at any new facts you have and correct any mistakes. The ALJ may also review those parts which you believe are correct and may make them unfavorable or less favorable to you." (Id. at 198). Since Plaintiff was notified that if an ALJ reviews his claim, the ALJ's decision may be less favorable, the Court finds that Plaintiff's argument fails.

With regards to the factual error cited by Plaintiff, the administrative decision erroneously stated that upon reconsideration Plaintiff's claim was denied, however, upon reconsideration Plaintiff was found to be disabled beginning January 21, 2013. This misstatement does not impact the outcome of the decision as the five-step sequential evaluation process requires the ALJ to determine whether or not the claimant is considered disabled from the alleged onset date. Plaintiff's request for an administrative hearing alleges an earlier onset date from that found on the reconsideration level. It is within the ALJ's discretion to determine whether the Plaintiff has met his burden of proof at steps one, two and four of the sequential evaluation process and to further determine whether the Commissioner has met its burden at the final step.[2] *Skyes*, 228 F.3d at 263. In light of the foregoing, the Court finds Plaintiff's first contention without merit and agrees with Defendant.

Secondly, Plaintiff alleges that ALJ Olarsch erred in his assertion that he afforded "great weight" to the opinions of non-examining state agency medical consultants yet he did not adopt said opinions in rendering his decision. (Pl.'s Br. 2). Plaintiff further argues that the ALJ did not commit a harmless error when he purported to give "great weight" to all the opinions from the consultant because the VE at Plaintiff's administrative hearing never offered testimony as to whether or not an individual with such limitations could work. (Id. 3). The Court finds Plaintiff's allegations unpersuasive as the VE provided testimony as to the jobs Plaintiff is able

---

[2] Neither party bears the burden of proof at the third step. *Skyes*, 228 F. 3d at 263 n. 3.

to perform notwithstanding his limitations. During the administrative hearing, the VE provided testimony that Plaintiff would be able to fulfill occupations as a telemarketer (R. at 77), labeler (id. at 80), office/cashier (id.), and ampoule filler (id.). In regards to Plaintiff's contention that an earlier vocational report completed for the Administration found that the limitations described by the state agency source as precluding Plaintiff from performing any work since the time he turned 50 years old, this argument fails.

A claimant "is entitled by statute to an evidentiary hearing and to a *de novo* review by an Administrative Law Judge." *Heckler v. Day*, 467 U.S. 104, 107 (1984)(citing 42 U.S.C. § 405 (b); 20 CFR §§ 404.929-404.961 (1983))[3]. Accordingly, ALJ Olarsch was not required to adopt or to adhere to the earlier vocational report completed for the Administration as argued by Plaintiff because an ALJ, in rendering his determination, engages in a *de novo* review of the record and is not bound by the determinations made at the initial and reconsideration levels. Therefore, ALJ Olarsch was within his discretion to base his findings on the VE's testimony from the May 28, 2014 administrative hearing.

Plaintiff alleges that the ALJ overlooked medical evidence underpinning the reconsideration decision for the Social Security Administration that found Plaintiff disabled since January 21, 2013. (Pl.'s Br. 2). Plaintiff further contends that although the ALJ asserted that he gave "great weight" to the state agency medical consultant, Dr. Joseph Presto, M.D., ALJ Olarsch did not adopt these opinions nor did he give reason for selectively crediting the opinions from the state agency medical consultant despite purporting to adopt the state agency opinions. This allegation

---

[3] "The ALJ decides the case de novo, meaning that he or she is not bound by the determinations made at the initial and reconsideration levels. The ALJ reviews any new medical and other evidence that was not available to prior adjudicators. The ALJ will also consider a claimant's testimony and the testimony of medical and vocational experts called for the hearing." Statement of Michael J. Astrue, Commissioner, Social Security Administration before the Committee on Ways and Means and Subcommittee on Social Security, June 27, 2012 (https://www.ssa.gov/legislation/testimony_062712.html).

is untrue because ALJ Olarsch did not assert to having adopted these opinions, rather he stated that he gave the opinions great weight. (R. at 32). The Code of Federal Regulations sets forth that "[g]enerally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion." 20 C.F.R. § 404.1527(c)(4)[4]. In accordance with 20 C.F.R. § 404.1527(c)(4), ALJ Olarsch's opinion included in his analysis the state agency medical consultants' opinions and further explained why in light of the medical evidence in the record or Plaintiff's own description of his activities of daily life, Dr. Abboud's opinion was inconsistent. (*See* R. at 31).

Furthermore, Plaintiff's assertion that the medical evidence from Dr. Joseph Presto, M.D., that supported a finding of disability upon reconsideration from January 21, 2013 was overlooked is without merit. The administrative decision sets forth:

> As for the opinion evidence, the state agency medical consultants opined the claimant capable of a narrow range of light work with standing and walking limited to no more than four hours (Exhibit 5A-6A). This opinion is not inconsistent with the medical evidence in the record or the claimant's own description of his daily living. As such it is accorded great weight. Dr. Abboud's opinions at Exhibits 8F and 18F are accorded less weight due to the [] reasons [discussed herein]."

(R. at 32). Dr. Abboud opined that Plaintiff is able to lift and carry a maximum of five pounds, stand and/or walk for up to two hours per day, sit for less than six hours per day and is limited in his ability to push and/or pull. (Id. at 63). Dr. Abboud's second opinion referred to by the ALJ sets forth that Plaintiff is able to occasionally lift and carry up to five pounds and Plaintiff does not have a significant limitation in doing repetitive reaching, handling, fingering or lifting. (Id. at 769-70). Furthermore, "the ALJ—not treating or examining physicians or State agency

---

[4] The Court recognizes that the regulation is current through the July 17, 2017 issue of the Federal Register as pursuant to 82 F.R. 8346, a "Regulatory Freeze Pending Review" has been imposed and therefore certain regulations will be delayed pending further review. However, because this motion was filed prior to July 17, 2017, the Court will rely on the regulations as promulgated in the Code of Federal Regulations.

14

consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (citing 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c)). Regulations, 20 C.F.R. §§404.1527(f) and 416.927(f), require the ALJ to consider, not adopt, medical opinions contained within the record together with the rest of the relevant evidence of record. Here, the ALJ explained, as required by Third Circuit precedent[5] and the regulations, the reasons why specific medical evidence was discredited based on the record as a whole.

Thirdly, Plaintiff sets forth a general proposition that the affirmation of the ALJ's decision results in manifest injustice and a clear error because the Court's opinion affirming the ALJ's findings does not discuss medical evidence, procedural history, or the ALJ's purported selective adoption of the evidence. (Pl.'s Br. 3). And, further, Plaintiff argues that if the Court recognized the ALJ's purported error then the Court would have found that the ALJ's decision was not supported by substantial evidence. (Id.).

Furthermore, this issue is not one that was presented to but not considered by the Court, Plaintiff's initial appeal argued two points: first, that the ALJ failed to properly weigh the medical evidence and failed to properly determine Plaintiff's RFC and secondly, the ALJ failed to properly evaluate Plaintiff's credibility. (*See* ECF No. 9). Although Plaintiff argues that the Court must reverse or remand its previous decision in order to prevent manifest injustice, the motion amounts to a mere disagreement with the Court's previous decision. Plaintiff has not shown a need to prevent manifest injustice. "A moving party must show that dispositive factual matters or controlling decisions of law were overlooked by the Court in reaching its prior

---

[5] "A court must assess whether the ALJ, when confronted with conflicting evidence, 'adequately explain[ed] in the record his reasons for rejecting or discrediting competent evidence.'" *Ogden v. Bowen*, 611 F. Supp. 273, 278 (M.D. Pa. 1987) (citing *Brewster v. Heckler*, 786 F.2d 581 (3d Cir. 1986)). If the ALJ fails to properly indicate why evidence was discredited or rejected, the Court cannot determine whether the evidence was discredited or simply ignored. *See Burnett v. Comm'r of Soc. Sec*, 220 F.3d 112, 121 (3d Cir. 2000).

15

decision." *Natalizzo v. Astrue*, No. 12-02490 2013 U.S. Dist. LEXIS 64710 (D.N.J May 6, 2012)(quoting *Ray v. Merline*, No. 06-3040 2007 U.S. Dist. LEXIS 22225 (D.N.J. March 26, 2007)). Here, the fact that the ALJ set forth that upon reconsideration Plaintiff was found to be not disabled is not dispositive to this matter because as discussed above, the ALJ reviews the record *de novo* and was within his discretion to issue a less favorable decision than was found at the reconsideration level. The ALJ also took into account the medical opinions that contributed to rendering the Plaintiff disabled at the reconsideration level. Therefore, the Plaintiff's argument amounts to a disagreement with the Court's opinion affirming the ALJ's decision. "'[M]ere disagreement with the district court's decision is inappropriate on a' Rule 59(e) motion." *Id.* And further, "[b]ecause reconsideration of a judgment after its entry is an extraordinary remedy, requests pursuant to these rules are to be granted sparingly, and only when dispositive factual matters or controlling decisions of law were brought to the court's attention but not considered." *P. Schoenfeld Asset Mgmt.*, 161 F. Supp. 2d at 353 (internal citations and quotations omitted). Plaintiff in the present case has failed to present any evidence to establish that the affirmation of ALJ Olarsch's decision is manifestly unjust. Accordingly, based on the foregoing, Plaintiff's motion for reconsideration is denied.

## IV.   CONCLUSION

As discussed above, the Court denies Plaintiff's motion. Accordingly, the Court's previous decision affirming ALJ Olarsch's determination is affirmed. An appropriate Order accompanies this Opinion.

DATED: July 25th, 2017

JOSE L. LINARES
CHIEF JUDGE, U.S. DISTRICT COURT